IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:24-cr-165-MSN |
| v. : | Hon. Michael S. Nachmanoff |
| : | Hearing Date: Sept. 5, 2025 |
| ABIMBOLA AJAYI, : | |
| : | |
| Defendant. : | |

**DEFENDANT'S RESPONSE TO THE
GOVERNMENT'S POSITION ON SENTENCING**

Abimbola Ajayi, through counsel, respectfully submits the following brief response to the government's Position on Sentencing, ECF No. 208. Ms. Ajayi addresses only those points that require factual corrections, submission of additional documents, or responses to caselaw. She will further respond to the government's position at the sentencing hearing.

**I.   THE GOVERNMENT HAS NOT PROVED A LOSS VALUE OF $186,050.**

The government repeatedly contends that Ms. Ajayi defrauded Project HOPE of every dollar in every invoice that it presents. Yet, many of Ms. Ajayi's character letters—including one from a Project HOPE consultant, and another from a professional collaborator with Project HOPE—confirm that she performed significant work for Project HOPE. Ajayi's Position on Sentencing at 17–18, ECF No. 211; *see also* Ex. 1 (confirming Andrew Ikuesan's role with Project HOPE). Mr. Ikuesan referred to ICHSSA-Region 2,[1] which ultimately led to a successful proposal with a related organization. Ikuesan Letter, Ex. 8 to Ajayi's Position on Sentencing, ECF No. 212-7; *see* Ex. 2 at 0003470-3473 (teaming agreement with ARFH); *id.* at 0003427-

---

[1]   At trial, there was reference to work on ICCSHA by Dr. Usman. He worked on ICHSSA Region 4 (Adamawa and Bauchi), not Region 2 (Lagos and other areas). *See* Ex. 4 at 0001400, 00001468.

1

3469 (project proposal); ICHSSA-2 Comprehensive Factsheet, Ex. 3.[2] Dr. Oyedeji specifically refers to SHARP, the subject of the very first invoice presented by the government. *See* Ex. 1 to Government's Position on Sentencing (Invoice 1), ECF No. 208-1; Dr. Oyedeji Letter, Ex. 7 to Ajayi's Position on Sentencing, ECF No. 212-6;[3] *see also* Ex. 4 at 0002216-2219 (letters from local partners, obtained largely through efforts of Ms. Ajayi). More broadly, Dr. Oyedeji refers to several tasks relating to HIV/AIDS, the subject of many of the remaining invoices. Similarly, Dr. Afolabi refers to Project HOPE's work on malaria. *See* Dr. Afolabi Letter, Ex. 3 to Ajayi's Position on Sentencing, ECF No. 212-2; *see also* ECF No. 208-1 (frequently referring to malaria).

Although the government refers to a lack of deliverables, it was established at trial that pre-positioning work frequently would not result in documentation or the like. Trial Tr. Vol. 2A (May 13, 2025) at 97:2 – 99:29, ECF No. 180 (testimony of Anthony Tredon); Trial Tr. Vol. 2B (May 13, 2025) at 68:10-17, 90:19 – 91:14 (testimony of Steven Neri), ECF No. 176; Trial Tr. Vol. 3 (May 14, 2025) at 58:8-20 (testimony of Wondwoosen Asefa), ECF No. 177.

Furthermore, Mr. Ogunwale's emails from Project HOPE contain many relating to work that Ms. Ajayi performed on behalf of Project HOPE. Again, some of this work appears to be described in specific invoices. *Compare* Ex. 4 at 0002245 (referring to work on TB in Ukraine), 0002276 (referring to work in Bangladesh),[4] and 0002279 (requesting possible work on

---

[2]    The Factsheet is available online at https://arfh-ng.org/wp-content/uploads/2025/03/USAID-ICHSSA-2-End-of-Project-Factsheet_ARFH.pdf.

[3]    Ms. Ajayi's exhibits were erroneously filed and then re-filed as a separate docket entry.

[4]    Anthony Tredon testified about this work at trial. Trial Tr. Vol. 2A (May 13, 2025) at 125:23 – 126:9, ECF No. 180.

"Community HIV Care and Treatment Activity" in Ethiopia) *with* ECF No. 208-1 (invoices 6–8, 16, 17–19).

### II.    MS. AJAYI WAS A MINOR PARTICIPANT.

The government argues that Ms. Ajayi was not a minor participant. It relies largely on caselaw preceding the Sentencing Commission's amendments to the commentary on the minor participant adjustment, "which implicitly rejected the *Powell* standard and clarified how the minor-participant reduction should be applied." *United States v. Carbajal*, 717 F. App'x 234, 240 (4th Cir. 2018). It did so precisely because the adjustment had been applied "more sparingly than the Commission intended." *Ibid.* (quoting *U.S. Sent'g Guidelines Manual*, app. C, amend. 794, at 117 (U.S. Sentencing Comm'n Supp. 2015)). Indeed, it is difficult to imagine how such a reduction could ever be applied to a completed offense. Under the current guidelines, a defendant who played an indispensable role "may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." *U.S. Sent'g Guidelines Manual* (USSG), § 3B1.2, comment 3(C) (2024).[5]'

Likewise, it is no longer the case that a defendant's conduct is compared to the offense of conviction. Now, the question is whether a defendant is "substantially less culpable than the average participant in the criminal activity." USSG § 3B1.2, comment 3(A). "In other words, a sentencing court must compare the culpability of the defendant to her codefendants in the criminal enterprise for which she has been convicted, not other defendants convicted of the same offense generally." *Carbajal*, 717 F. App'x at 240 (remanding to compare defendant's conduct

---

[5]    To the extent that the Court deems it relevant, Ms. Ajayi maintains that she did not play an essential role. The government contends that she sent Mr. Ogunwale invoices that he had written and transferred money to him by various means. Mr. Ogunwale could have done as much himself through setting up additional email addresses and financial accounts.

with that of average participant in the conspiracy). Thus, the only appropriate comparator is Mr. Ogunwale, who (in the government's version of events) is far more culpable.

The government correctly identifies the additional factors, although it omits that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." USSG § 3B1.2, comment 3(C). That is what the government contends Ms. Ajayi's role to have been: she allegedly facilitated the transfer of funds to Mr. Ogunwale, keeping some of the money for herself. To conclude that Ms. Ajayi played a minor role would be consistent with the application of the remaining factors: there is no evidence that Ms. Ajayi knew anything about Mr. Ogunwale's activity that did not involve her; the government's position is that she closely followed the directions of Mr. Ogunwale, *i.e.*, that she did not participate in planning or exercise any decision-making authority, and that she had little discretion in the acts she allegedly performed; those acts made up a fairly small part of the offense; and she allegedly benefited from the criminal activity to a comparatively small extent, being responsible for only a quarter of the purported loss and supposedly paying much of that to Mr. Ogunwale.

### III. MS. AJAYI DID NOT EMPLOY SOPHISTICATED MEANS.

The government contends that Ms. Ajayi used sophisticated means by submitting false invoices and requesting and receiving money through PayPal. Ms. Ajayi reiterates her objection to the government's untimely assertion of this enhancement, which was not included in the PSR. *See* Ajayi's Position on Sentencing at 20–21, ECF No. 211.

The government bases much of its theory on the complexity of the entire scheme. Application of the enhancement, however, requires that "the offense otherwise involved sophisticated means *and the defendant* intentionally engaged in or caused the conduct constituting sophisticated means." USSG § 2B1.1(b)(10)(C) (emphasis added); *cf. United States*

4

*v. Savage*, 885 F.3d 212, 228-29 (4th Cir. 2018) (defendant personally took numerous complex actions and "directed actions of several other conspirators"); *United States v. White*, 850 F.3d 667, 675-76 (4th Cir. 2017) (considering individual conduct of the defendant being sentenced). Even if the Court deems the scheme complex, it may consider only Ms. Ajayi's part in that complexity.

What conduct is attributable to Ms. Ajayi is no more complex than would be necessary for fraud.[6] The plausibility of invoices—which, according to the government, were generated by Mr. Ogunwale—would be essential to any fraud. *See United States v. Archuletta*, 231 F.3d 682, 685 (10th Cir. 2000) ("An element of 'deliberation,' as distinguished from 'spontaneity,' and the use of a false name or false identification to defraud, are each endemic to the specific offense."). Similarly, working to effect payment would be part and parcel of fraud. *See id.* at 685-86 ("[B]ecause Archuletta could not have violated § 1344 unless she actually obtained funds from the credit union through fraud, the fact Archuletta returned for the starter checks the following day is also evidence of nothing more than the minimum conduct required to establish a violation of § 1344 in its simplest form."). A fraud that is immediately detectable, or in which there is no way to transfer money, would not be representatively simple—it would be exceptional in its poor execution. Ms. Ajayi's role in "concealment" beyond that consists of submitting PayPal invoices that were all marked as "AbbiFab Dynamics," and sending money to Mr. Ogunwale. But, as Ms. Fasola testified at trial, it is common for Nigerians to exchange money informally. Indeed,

---

[6] Tax fraud, despite the name, requires no more than a failure to accurately report income. *See United States v. Jinwright*, 683 F.3d 471, 486 (4th Cir. 2012) ("The Jinwrights' failure to accurately report their income would not alone support imposition of the sophisticated means enhancement."). Wire fraud requires more complex deception. *Jinwright* is thus of questionable relevance, as are other cases applying the sophisticated means enhancement for "tax fraud." *See* USSG § 2T1.1(b)(2).

she testified that Mr. Ogunwale would also send money to Ms. Ajayi. Trial Tr. Vol. 4A (May 15, 2025) at 32:20 – 33:16, 34:8-9, 39:2-8, 40:8-17, 41:4-21, 42:9-14, ECF No. 181.

The government contends that Ms. Ajayi's conduct of conviction is comparable to *United States v. Sanders*, 146 F.4th 372 (4th Cir. 2025), in which the Fourth Circuit "found" the sophisticated means enhancement to apply. Gov't's Pos. on Sent'g at 15. This contention is wrong, twice over. First, the Fourth Circuit reviewed for clear error, and therefore found only that "the district court's finding of sophisticated means was certainly plausible." *Sanders*, 146 F.4th at 382; *see id.* at 379 (describing the standard of review). Second, Sanders' role in the offense went far beyond transferring money and submitting invoices.[7] *United States v. Wolf* is similarly inapplicable. *See* 860 F.3d 175, 180-84, 199 (4th Cir. 2017) (finding no clear error where district court applied sophisticated means enhancement to defendant who "directed every aspect" of a complex multi-participant mortgage fraud scheme).

## IV. THE SENTENCING FACTORS CALL FOR PROBATION OR A SHORT SENTENCE.

Ms. Ajayi did not have steady employment until 2019. *See* PSR ¶¶ 112-13. Additionally, Ms. Ajayi did not acquire her current car until 2023.

---

[7] "Sanders fraudulently entered contracts with multiple government entities over a period of five years. When bidding on federal contracts, Sanders used numerous variations of his name to give the appearance of his company having multiple employees. Then he formed a new company after his original business was flagged for a negative performance history, using an alternate address to register this new company. Further, Sanders supplied false certifications to government representatives and used various usernames and addresses to attempt to gain re-certifications. Finally, Sanders blind-shipped product to agencies with which he contracted, concealing his product source." 146 F.4th at 381-82 (citations omitted).

Respectfully submitted,

By: */s/ Eugene V. Gorokhov*
Eugene Gorokhov, Va. Bar No. 73582
Jonathan Knowles, *pro hac vice*
*Attorneys for defendant Abimbola Ajayi*
BURNHAM & GOROKHOV, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

## CERTIFICATE OF SERVICE

I certify that on September 2, 2025, a redacted copy of the foregoing Response to Position on Sentencing was filed with the Clerk of Court via ECF, which automatically sends a copy to all counsel of record.

By: /s/ *Eugene V. Gorokhov*
Eugene Gorokhov, Va. Bar No. 73582
*Attorney for defendant Abimbola Ajayi*
BURNHAM & GOROKHOV, PLLC
1634 I Street NW, Suite 575
Washington, DC 20006
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com